# Exhibit A



**Sanford Heisler Sharp, LLP**
655 West Broadway, Suite 1700
San Diego, CA 92101
Telephone: (619) 577-4253
Fax: (619) 577-4250
www.sanfordheisler.com

*Edward Chapin*, CA Managing Partner
619-577-4251
Echapin2@sanfordheisler.com

New York | Washington D.C. | San Francisco | San Diego | Nashville| Baltimore

March 7, 2019

**VIA PERSONAL SERVICE**
Frank L. Tobin
4370 La Jolla Village Drive
San Diego, CA 92122

      **Re:**     ***Julia Vega v. Honeywell International, Inc.***

Dear Mr. Tobin:

Thank you for agreeing to accept service of Julia Vega's complaint against Honeywell International, Inc. Enclosed please find the complaint my firm filed on Ms. Vega's behalf on January 7th, 2019 in San Diego Superior Court as well as the following documents:

- Exhibits 1 and 2 to the Complaint
- Summons
- Alternative Dispute Resolution Information and Stipulation to Alternative Dispute Resolution Process
- Notice of Case Assignment and Case Management Conference

As a courtesy, we are providing Exhibits 1 and 2 referenced above although they are not presently part of the Court's record. We are preparing an amended complaint that will include both exhibits.

                          Sincerely,

                          Edward Chapin

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*
HONEYWELL INTERNATIONAL, INC.

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JULIA VEGA

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/07/2019** at 11:41:30 PM
Clerk of the Superior Court
By Gen Dieu,Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* SAN DIEGO SUPERIOR COURT<br>330 W BROADWAY SAN DIEGO, CA 92101 | CASE NUMBER:<br>*(Número del Caso):* 37-2019-00001046-CU-OE-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Edward D. Chapin. 655 W Broadway Suite 1700 San Diego, CA 92101. 619-577-4253

DATE: 01/08/2019                    Clerk, by _____ G. Dieu , Deputy
*(Fecha)*                           *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Honeywell International, Inc. a Delaware Corporation

   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 03/07/2019

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

Exhibit A, Page 3 of 51

1    Edward D. Chapin (CA Bar No. 53287)
     echapin2@sanfordheisler.com
2    Cara W. Van Dorn (CA Bar No. 321669)
     cvandorn@sanfordheisler.com
3    SANFORD HEISLER SHARP, LLP
     655 W Broadway, Suite 1700
4    San Diego, CA 92101
5    Telephone: (619) 577-4253
     Facsimile: (619) 577-4250
6
7    Felicia M. Gilbert (CA Bar No. 276348)
     fgilbert@sanfordheisler.com
8    SANFORD HEISLER SHARP, LLP
     111 Sutter Street, Suite 975
9    San Francisco, CA 94104
     Telephone: (415) 795-2020
10   Facsimile: (415) 795-2021

11   *Attorneys for Plaintiff*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**01/07/2019** at 11:41:30 PM
Clerk of the Superior Court
By Gen Dieu,Deputy Clerk

12              **SUPERIOR COURT OF CALIFORNIA**
13                 **COUNTY OF SAN DIEGO**

14   **JULIA VEGA,**                    Civil Action No.  37-2019-00001046-CU-OE-CTL
15
     **Plaintiff,**                     **Unlimited Civil Case**
16
17   **v.**                             **COMPLAINT FOR:**
                                        1. **Gender Discrimination (FEHA)**
18   **HONEYWELL  INTERNATIONAL,  INC.,**   2. **Violation of the California**
     **a Delaware Corporation**              **Equal Pay Act**
19                                      3. **Retaliation (FEHA)**
     **Defendant.**                     4. **Intentional Infliction of**
20                                         **Emotional Distress**
21                                      5. **Gender Discrimination (Title**
                                           **VII)**
22                                      6. **Retaliation (Title VII)**
                                        7. **Violation of the Equal Pay Act**
23                                      8. **Retaliation (Equal Pay Act)**
                                        9. **Constructive Discharge**
24
25                                      **JURY TRIAL DEMANDED**
26
27
28

                               - 1 -
                            COMPLAINT

Plaintiff Julia Vega ("Plaintiff" or "Ms. Vega"), by and through her attorneys, brings this action against Defendant Honeywell International Incorporated ("Honeywell" or "Company"). Plaintiff alleges, the following:

## **INTRODUCTION**

1.      Plaintiff Julia Vega is a well-educated, high performing electrical engineer who endured years of unfair, sexist treatment by her former employer, Honeywell Aerospace— costing her substantial unpaid wages and causing her severe and debilitating emotional distress.

2.      Working under male leadership who view women as less valuable and capable employees, Ms. Vega was routinely denied basic job opportunities, hampering the progress of her career and halting her advancement within the Company. Honeywell management also specifically excluded Ms. Vega from a major business opportunity expressly because of her gender. Major decisions regarding promotions were similarly tainted by gender bias. Ms. Vega's supervisor attempted to pressure her into accepting a promotion in name only, expecting her to assume additional responsibilities and perform managerial tasks with no corresponding increase in pay.

3.      Honeywell management made clear by words and action that working mothers were considered inferior, undedicated employees. Women were derided for requesting advance notice prior to working weekends in order to find childcare and such requests were flatly ignored. Management seemed to take pleasure in approaching her on a Friday afternoon to demand that she work the following day.

4.      Honeywell's unjust and illegal conduct took a significant toll on Ms. Vega, causing her to develop severe mental health and stress-related issues. Plaintiff's efforts to report and address these clear instances of discrimination provided no remedy, as Honeywell's perfunctory investigations found nothing improper had occurred, and no corrective action was taken. Instead, Plaintiff's supervisors were permitted to retaliate against her, ultimately forcing her to resign from Honeywell entirely. Plaintiff continues to struggle to cope with the economic, physical, and emotional damage caused by Honeywell's actions to this day.

COMPLAINT

1    5.    To remedy the injuries Plaintiff suffered as a result of Honeywell's illegal and

2    outrageous conduct in discriminating against her based on her gender and in retaliating against

3    her after she complained, Plaintiff brings this action for damages alleging violations of Title VII

4    of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Fair Labor

5    Standards Act of 1938, 29 U.S.C. §§ 206, *et seq.*, as amended by the Equal Pay Act of 1963

6    ("EPA"), the California Fair Employment and Housing Act, Cal. Lab. Code § 12940 *et seq.*

7    ("FEHA"), and the California Equal Pay Act, Cal. Lab. Code § 1197.5 ("CEPA"), as well as

8    causes of action for intentional infliction of emotional distress and constructive discharge.

9    **THE PARTIES**

10    6.    **Plaintiff Julia Vega** is a woman who lives in Oceanside, California and is a

11    United States citizen. She was employed by Honeywell from approximately April 2010 to

12    October 2017.

13    7.    **Defendant Honeywell International Incorporated** is a corporation formed

14    under the laws of the State of Delaware with its corporate headquarters in the County of Morris

15    at 115 Tabor Road, Morris Plains, New Jersey 07950.

16    8.    Honeywell Aerospace is a Strategic Business Unit of Honeywell that designs and

17    manufactures aviation productions for commercial and defense applications and provides

18    engineering services in the United States and internationally.

19    9.    Substantially all of Honeywell's aviation and aerospace products and services,

20    which account for about 30% of its revenue, are operated by Honeywell Aerospace. Honeywell

21    Aerospace is headquartered in Phoenix, Arizona and maintains facilities in California, including,

22    until recently, a facility located at 13475 Danielson Street, #100, Poway, California 92064.

23    10.    During all relevant times, Honeywell was Plaintiff's employer within the meaning

24    of all applicable statutes.

25    **JURISDICTION AND VENUE**

26    11.    This Court has jurisdiction over Honeywell pursuant to California Code of Civil

27    Procedure section 410.10 because Honeywell is currently doing business in and committed the

28

- 3 -

COMPLAINT

1 | subject acts and omissions in San Diego County, California.

2 |      12.    Venue is proper in San Diego County pursuant to California Code of Civil

3 | Procedure section 395.5 because the obligations and liability at issue in this action arose in San

4 | Diego County.

5 |      13.    Plaintiff Julia Vega has exhausted her administrative remedies and complied with

6 | all statutory prerequisites to maintain Title VII and FEHA claims. Plaintiff dual-filed a charge of

7 | gender discrimination and retaliation against Honeywell with the Equal Employment

8 | Opportunity Commission ("EEOC") and the California Department of Fair Employment and

9 | Housing ("DFEH") on March 26, 2018. On March 29, 2018, the EEOC issued a Notice of Right

10 | to Sue (attached hereto as Exhibit 1).  Plaintiff requested and received a Notice of Right to Sue

11 | from the DFEH on January 7, 2019 (attached hereto as Exhibit 2).

12 |      14.    The parties entered into a separate tolling agreement on June 27, 2018, which

13 | tolled all applicable statutes of limitation from June 25, 2018 through December 25, 2018.

14 | **FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

15 | **A. Plaintiff's Background and Employment History.**

16 |      15.    While completing her B.S. in Electrical Engineering from the University of

17 | Washington, Plaintiff Julia Vega worked at a Honeywell Aerospace facility in Washington State

18 | as an Engineering Intern from June 14, 2004 to January 11, 2005. Due to her stellar performance,

19 | she was hired as a contractor, even though there was no full-time position available at the time.

20 | On February 21, 2005, Plaintiff accepted a full-time position with Honeywell as a Project

21 | Engineer. Ms. Vega was let go during a round of layoffs in June 2005 but was rehired a month

22 | later as a Software Engineer.

23 |      16.    In February 2010, when Plaintiff relocated from Washington State to San Diego,

24 | California for personal reasons, she had to resign from Honeywell because the Company did not

25 | respond timely to her application for a position in San Diego County. Two months later,

26 | Honeywell rehired Plaintiff when a position became available at its facility in Poway, California.

27 |

28 |

-4-

COMPLAINT

1   Plaintiff worked at the Poway location from April 2010 until she was constructively discharged
2   on October 6, 2017.

3       17.     Plaintiff's job title at the time of her constructive discharge was Principal Systems
4   Engineer.  In that role, Plaintiff was responsible for configuring the Company's systems for use
5   in several different models of helicopters and for resolving technical issues.

6       18.     Plaintiff worked in the Helicopter Usage and Monitoring System ("HUMS")
7   group, which encompassed approximately sixty employees at Honeywell's facilities in
8   California, Arizona, and New Mexico.  Of the sixty HUMS employees, there were no more than
9   six or seven women at any given time.

10      19.     Plaintiff's exemplary work ethic, reliability, and work performance made her a
11  valuable asset to the Company and garnered respect among her peers. She was frequently
12  recognized as a top performer. Honeywell sent Ms. Vega to Technical Leadership Development
13  Trainings (an internal Honeywell program designed for future company leaders), and she was
14  selected to attend and speak at several conferences organized by the Society of Women
15  Engineers. Plaintiff contributed to the development of new technology for the Company,
16  receiving a patent for a 3-D weather radar in her name alongside two other Honeywell
17  employees in 2007. Acknowledging her exemplary performance, Honeywell presented Ms. Vega
18  with the Outstanding Engineer award in 2011.

19      20.     Despite Plaintiff's outstanding performance throughout her tenure at the
20  Company, Honeywell discriminated against her based on her gender and retaliated against her
21  once she complained about her mistreatment.

22      **B.  Honeywell Cultivated a Discriminatory Culture of Gender Bias.**

23      21.     Plaintiff's career stalled when Senior Technical Manager Mark Asplund became
24  her second level supervisor in 2014. Mr. Asplund's misogynistic views of women in the
25  workplace quickly became widely known among female employees in the HUMS group—he
26  believed that women were inferior employees and not dedicated to their careers. He never missed
27  an opportunity to demonstrate that he did not enjoy working alongside women and did not view
28

- 5 -

COMPLAINT

1    them as equals. Mr. Asplund had a reputation for retaliating against women who challenged or

2    complained about him or the work environment.

3          22.    Mr. Asplund freely acted on his animus toward women at Honeywell. The

4    Company's refusal to address complaints about Mr. Asplund's biased and discriminatory

5    treatment of women has fostered a toxic culture in which female employees are compelled to

6    accept his chauvinistic behavior and yield to his unreasonable demands out of fear of retaliation.

7          23.    From 2014 through her constructive discharge, Plaintiff Vega's direct supervisor

8    was Technical Manager Melinda Hunt. Accordingly, Ms. Hunt worked for Mr. Asplund for

9    many years. Mr. Asplund's history of petty retaliatory actions forced Ms. Hunt to undertake a

10    strategy of "not making waves" with him. Ms. Hunt has lamented being treated more like a

11    secretary than a Technical Manager. She advised Plaintiff that, "It is not okay to say 'no' to

12    Mark Asplund, especially being a woman, because it is not well received."

13          24.    Ms. Hunt has also commented on Mr. Asplund's thin-skinned aversion to any sort

14    of perceived challenge to his authority and his "long memory," which has often resulted in him

15    engaging in retaliatory acts weeks or months after an imagined slight. Motivated by self-

16    preservation, Ms. Hunt adjusted her demeanor and work-style to be as non-threatening and

17    submissive to Mr. Asplund as possible.

18          25.    Project Engineer Staci Neilson told Plaintiff that "using your child as a boundary

19    to not work the weekend and ask for advance notice of weekend work is unacceptable" and

20    echoed Ms. Hunt's concerns that "saying 'no' to Mark Asplund is unacceptable."

21          26.    Such comments (or warnings) provide an accurate depiction of the work

22    environment under Mark Asplund. Mr. Asplund effectively cultivated an environment in which

23    his orders were swiftly carried out unopposed and unquestioned, regardless of his plainly

24    discriminatory agenda.

25

26

27

28

- 6 -

COMPLAINT

**C. Honeywell Discriminated Against Ms. Vega with Respect to Development Opportunities.**

27.     From the beginning of Plaintiff's tenure at Honeywell's Poway facility, the prevailing "boys' club" culture prevented her from participating in key career advancement opportunities because of her gender.

28.     As a Principal Systems Engineer, one of Plaintiff's fundamental responsibilities was to conduct aircraft surveys in the field with customers and configure their helicopters' systems to their unique specifications. Conducting these surveys was also a major criterion in Plaintiff's performance evaluations.

29.     Opportunities to perform these surveys presented themselves every few months, and Plaintiff consistently volunteered to administer them. However, Mr. Asplund and the two other decisionmakers, Principal Applications Engineer Mark DiCiero and Staff Applications Engineer Dave Lilly, routinely selected male engineers to do the job.

30.     Mr. Asplund, Mr. DiCiero, and Mr. Lilly justified these decisions by telling Ms. Vega that she needed more experience or qualifications. This reason was plainly spurious, as Plaintiff's experience and qualifications were equivalent or superior to those of the male colleagues routinely selected for the job.

31.     Throughout her seven-year tenure at the Poway office, Ms. Vega was selected to conduct an aircraft survey just once. The one time she was selected in or around December 2011, Plaintiff quickly realized that she was included only to fill the non-technical role of Russian translator for a Russian-speaking client. The other engineer—a man—administered the survey while she translated.

32.     Because Honeywell continuously denied Plaintiff the opportunity to conduct aircraft surveys, she was unable to meet her performance requirements, preventing her from receiving merit increases to her pay for which she would otherwise have been eligible.

COMPLAINT

33.     Plaintiff estimates that she was denied this career-advancing opportunity between four and six times per year for a period of seven years—a total of twenty-eight to forty-two unjustified adverse employment actions based on her gender.

34.     The only other female engineers in the HUMS group, Applications Systems Engineers Sonya Petty and Megan Wilson, experienced comparable discrimination and exclusion from this important employment opportunity. Both women lamented the lack of professional development opportunities and stagnant career advancement they experienced Honeywell. Ms. Petty ultimately left the Company due to the dearth of career-advancing opportunities made available to women. In Ms. Wilson's four years with the HUMS group, she was *never* afforded the opportunity to conduct an aircraft survey.

### D. Honeywell Discriminated Against Ms. Vega With Respect to Pay and Promotions.

35.     Honeywell paid Plaintiff less than similarly situated male employees performing equal or substantially similar work. Honeywell also treated Ms. Vega differently and less favorably than men in the promotion process.

36.     In 2013, Plaintiff's job title was Senior Applications Engineer, a position that Honeywell categorizes as an "individual contributor." In late 2013, Plaintiff's supervisor, Technical Manager Dennis Martin, announced his intention to retire the following year. Given Plaintiff's high performance and consistent with Honeywell's practice of creating a talent pipeline and planning smooth managerial succession, Mr. Martin indicated to Julia that he intended for her to succeed him as Applications Technical Manager. Ms. Vega had already been acting as Mr. Martin's protégé for approximately two years, assuming his managerial duties when he was on vacation.

37.     In the period following Mr. Martin's retirement announcement, Ms. Vega's performance reviews note that she was well-suited to lead either the Applications or Systems group within HUMS as a Technical Manager. In addition to performing all of her regular job duties, Ms. Vega was required to assume many of Mr. Martin's managerial job duties, which

- 8 -

1  included leading weekly HUMS group meetings, allocating work assignments to the HUMS

2  team members at the Poway, Torrance, Huntsville, and Phoenix facilities, developing and

3  submitting equipment funding requests, program budgets, bids, and proposals. Leading up to Mr.

4  Martin's retirement in late 2014, Ms. Vega acted as Mr. Martin's delegate with increasing

5  frequency.

6        38.    Upon information and belief, promotion from an "individual contributor" role to a

7  managerial role within Honeywell typically entails a salary increase of approximately 20%. A

8  promotion from Principal Systems Engineer to Technical Manager would substantially increase

9  her job responsibilities and expand the scope of her role within HUMS. Under Honeywell's

10  standard practice, Plaintiff's prospective transition into her supervisor's position upon his

11  retirement would certainly warrant a significant pay raise.[1]

12        39.    However, when Mr. Martin retired in or around December 2014, Honeywell

13  offered to promote Plaintiff to Technical Manager *in name only*. Under the offer, Plaintiff would

14  assume the title and fulfill the responsibilities of the position full-time but would receive no

15  corresponding pay raise. Ms. Vega attempted in good faith to negotiate the salary adjustment she

16  expected to receive for fully assuming the Technical Manager role. When Plaintiff pointed out

17  the disparity to Mr. Asplund, instead of taking her request seriously, he responded insultingly,

18  "Why should I pay you more when you're already doing this job?"

19        40.    Despite Ms. Vega having already demonstrated her proficiency in fulfilling the

20  duties of the role by performing them on an interim basis for the better part of a year, Senior

21  Technical Manager Asplund, who became Ms. Vega's second-level supervisor in 2014 and was

22  the hiring manager for the Technical Manager position, declined to offer her *any* sort of pay

23

24  _____

25  [1] As Defendant is sure to point out, Mr. Martin earned a lower base salary than Ms. Vega despite
holding a managerial role. This, however, was for legitimate business reasons: Mr. Martin is a

26  high school graduate with no college degree, while Ms. Vega holds a Bachelor of Science
degree. Ms. Vega and Mr. Martin were not equivalent comparators in terms of qualifications,

27  results, or salary.

28

1    increase in connection with the proposed promotion. Because Mr. Asplund refused to offer Ms.

2    Vega the pay increase that she deserved, accepting the so-called promotion to Technical

3    Manager would have *lowered* Plaintiff's total compensation, as, per Honeywell's policy, the title

4    change would have made Plaintiff ineligible for her annual merit increase due in March 2015.

5          41.    Other members of HUMS management, Director Lonny Rakes and Senior

6    Technical Manager Rance Myers, separately expressed their views on the pay increase dispute in

7    telephone calls to Ms. Vega. They agreed that she deserved a pay increase upon assuming the

8    role of Technical Manager, but they lacked authority to override Mr. Asplund's decision.[2]

9          42.    Soon after Plaintiff declined the position, Mr. Asplund eliminated the open

10   Technical Manager position altogether and moved Plaintiff's team under the supervision of

11   another Technical Manager, Melinda Hunt.

12         43.    Although the position technically had been eliminated, Plaintiff was nonetheless

13   required to carry out the duties of Technical Manager whenever Ms. Hunt or Lead Systems

14   Engineer J.P. Cain was on vacation or out of the office. This occurred at least once per month,

15   and during busy summer months, the frequency increased to at least twice per month. These

16   additional responsibilities required Ms. Vega to work late into evenings and during weekends,

17   yet Plaintiff remained categorized as a Principal Systems Engineer and received the same

18   compensation.

19         44.    Mr. Asplund's sexism had a marked impact on the trajectory of Plaintiff's career,

20   slowing her advancement and causing her significant monetary loss. Before Mr. Asplund became

21   her supervisor in 2014, Plaintiff's compensation increased from approximately $100,000 to

22   $130,000 over the course of three years, from 2011 until 2014—a $30,000 increase. Once Mr.

23

24   ─────────────────────

25   [2] Ms. Vega was being considered for another position within Honeywell at the time, but Mr.
     Asplund's refusal to offer her a pay raise precluded the hiring manager for the other position
26   from offering one because Honeywell has a strict policy of not competing with itself in
     recruitment. Mr. Asplund, therefore, was singularly responsible for sinking two important career
27   advancement opportunities for Ms. Vega solely on account of her gender.

28

COMPLAINT

1    Asplund gained authority over her career at the end of 2014, Plaintiff's compensation stagnated,

2    increasing only $8,000 during the same length of time, from 2014 until her resignation in 2017.

3            **E.   Honeywell Discriminated Against Ms. Vega Based on Her Caregiver Status.**

4            45.    Although Plaintiff fully expected that the amount of responsibility and stress in

5    her life would dramatically increase after her first child was born in August 2015, she could not

6    have anticipated the challenge of being a mother while her employer intentionally and

7    maliciously sought to punish her for being a mother.

8            46.    As a working mother, Plaintiff was subjected to adverse and disparate terms and

9    conditions of employment based on unlawful stereotyping of women with caregiving

10   responsibilities. Plaintiff's status as a mother made her a target for unfair treatment to which

11   male colleagues were not subjected, regardless of their caregiver status.

12           47.    In or around September 2016, Plaintiff formally notified Honeywell that she

13   would be unable to work weekends without advance notice because she needed time to make

14   childcare arrangements for her infant child.  Based on her job duties, this request in no way

15   should have curtailed Plaintiff's ability to perform her job. However, Mr. Asplund disregarded

16   Plaintiff's request.

17           48.    On multiple occasions in 2016 and 2017, Mr. Asplund approached Plaintiff at the

18   close of the day on a Friday and demanded, unnecessarily, that she work over the weekend.

19   These demands were often made in a group setting or on a conference call, making it impossible

20   for Ms. Vega to push back without embarrassing herself and playing into stereotypes of working

21   mothers who are unable to fully commit to their careers.

22           49.    Upon information and belief, Mr. Asplund did not have a legitimate business

23   justification for making these last-minute demands.  When Plaintiff had to work early mornings

24   or late nights with colleagues other than Mr. Asplund, they were always able to inform her

25   several days in advance.

26           50.    Plaintiff regularly proposed alternative scheduling plans that would allow her to

27   perform the work Mr. Asplund requested without having to obtain childcare and work during

28

COMPLAINT

weekends.   However, Mr. Asplund rejected all of these proposals without any justification. Denying such reasonable requests is indefensible and demonstrative of Mr. Asplund's intention to harass Ms. Vega and put her at a disadvantage as a working mother. Mr. Asplund's malicious intent is also evidenced by his numerous comments to Plaintiff and others that undermined Ms. Vega based on stereotypes about working mothers.

**F.   Honeywell Denied Ms. Vega a Career-Defining Business Opportunity Expressly Because of Her Gender.**

51.     In or around June 2017, Technical Manager Melinda Hunt selected Plaintiff to travel to Spain on a business trip to visit a potential client, advise the client on Honeywell's product, and assist in negotiating a transaction. This opportunity was highly sought after and was a significant career development opportunity for Plaintiff.  She was surprised to learn a few days later that she had been removed from the trip and replaced by her peer, Principal Applications Engineer Mark DiCiero. Plaintiff later learned that Mr. DiCiero had convinced Ms. Hunt that the trip in question required a licensed pilot—a qualification that Plaintiff does not possess—even though no such requirement existed.

52.     Although Mr. DiCiero and Staff Applications Engineer Dave Lilly initially attested to the existence of this new requirement, when Plaintiff spoke to them individually, each man admitted that no such requirement existed and that, in fact, Plaintiff had been replaced because she is a woman.

53.     Mr. DiCiero explained: "sending a woman would be a disadvantage" because the customer would "lose confidence" in Honeywell and its product because "Spain is a chauvinistic country."

54.     Mr. Lilly similarly explained that it was simply unacceptable to send a woman before a purchase order was secured.

55.     Mr. DiCiero admitted to joining forces with Mr. Lilly in inserting the "pilot requirement" in order to bar Plaintiff from the career-advancing business opportunity. Mr. DiCiero stated that he felt strongly about sending a man on the trip in order to close the pending

- 12 -

1  transaction, clearly implying that Plaintiff, a woman, would simply not be able to complete the

2  task. Mr. DiCiero expressly acknowledged that Ms. Vega could get him fired for such obviously

3  sexist and discriminatory comments.

4      56.    A few weeks after the Spain trip discussed above, Ms. Hunt informed Plaintiff

5  that Mr. Asplund had specifically told her that he did not want Ms. Vega on the trip.

6  **G. Honeywell Retaliated Against Ms. Vega for Reporting Gender Discrimination.**

7      57.    Ambitious and full of initiative, each time Plaintiff encountered discrimination,

8  she attempted to report it and work with Honeywell to find a remedy. However, each time she

9  engaged in protected activity, members of Honeywell's management retaliated against her.

10      58.    In May 2014, Plaintiff, in addition to her other job duties, began serving in the

11  role of "Global Collaboration Focal." This role exposed Ms. Vega to a wide array of

12  Honeywell's global operations and afforded her a professional growth opportunity. In this role,

13  she was charged with facilitating weekly meetings, engendering cooperation, and removing

14  barriers to teamwork among Honeywell's facilities and teams across the globe. She also oversaw

15  collaborative projects between the Poway office and Honeywell's facilities in India, China, and

16  the Czech Republic.

17      59.    In or around January 2015, soon after Ms. Vega tried to negotiate a pay increase

18  as part of the so-called promotion to Technical Manager, Mr. Asplund punitively removed her

19  Global Collaboration Focal duties. This reduced Plaintiff's presence and impact within the

20  Company, translating into fewer opportunities for professional advancement and promotion. Ms.

21  Vega felt so intimidated by Mr. Asplund's retaliatory behavior that she feared what further

22  action he would take if she reported this incident to anyone. As other women in HUMS had

23  done, she decided to keep a low profile at the time to avoid provoking Mr. Asplund's ire and risk

24  further adverse action.

25      60.    After she was excluded from the trip to Spain based on her gender, Plaintiff

26  formally reported the incident to Human Resources ("HR") and to Vice President of Engineering

27  Test Services Barbara Brockett in or around June 23, 2017. Ms. Vega specifically reported that

28

COMPLAINT

1   both Mr. Lilly and Mr. DiCiero had admitted to convincing Ms. Hunt to revoke her invitation
2   solely because of her gender.

3          61.     HR made no real efforts to address her concerns. Instead, HR conducted a *pro*
4   *forma* investigation into Ms. Vega's claims, concluding that the decision to disinvite her from the
5   Spain trip was based on a business need. Plaintiff was never provided a justification for this
6   finding.

7          62.     Only days after Plaintiff raised her concerns with HR and Vice President
8   Brockett, Project Engineer Staci Nielson, who worked closely with Mr. Asplund, accused Ms.
9   Vega of time card fraud.

10         63.     On June 28, 2017, Mr. Asplund improperly initiated a retaliatory investigation of
11  Ms. Vega's alleged "time card fraud" outside of Honeywell's formal procedures and without
12  informing Human Resources that he was doing so.

13         64.     Plaintiff's HR representative, Jennifer Adams, was not made aware of the
14  Asplund-led investigation until Ms. Vega notified her nearly two weeks after it began. Had this
15  investigation been conducted through the proper channels, Ms. Adams would have been included
16  from the beginning. Upon review, Ms. Adams affirmed that Mr. Asplund had not followed
17  Honeywell's policies and procedures in initiating or conducting the investigation.

18         65.     In or around July 2017, Ms. Vega was informed by her supervisor, Technical
19  Manager Melinda Hunt that—unsurprisingly—the investigation revealed no evidence that Ms.
20  Vega committed timecard fraud.

21         66.     Although the investigation was ultimately closed and Ms. Vega's name cleared,
22  the investigation effectively served the purpose for which it was originally opened—to cause Ms.
23  Vega significant emotional distress and to tarnish her previously pristine reputation.

24         67.     Honeywell has used this tactic in the past to punish and push out other employees
25  who complained about issues in the workplace. Shortly after Ms. Vega learned about the
26  investigation into her time card, Ms. Hunt explained the true purpose of the frivolous
27  investigation: "This is what they do when they want to get rid of you."

28

- 14 -
COMPLAINT

68.     In or around July of 2017, Plaintiff communicated to HR Representative Jennifer Adams in both in-person meetings and email exchanges that she was experiencing emotional turmoil, stress, inability to sleep, and other health issues as a result of her treatment. Unsurprisingly, HR's quick and cursory investigation found no wrongdoing on the part of Mr. Asplund.

69.     Despite Ms. Vega reporting numerous instances of Mr. Asplund discriminating and retaliating against her, Honeywell took no action to punish Mr. Asplund, to remedy the problem, or to prevent further issues in the future.

70.     Instead, remarkably, on September 7, 2017, Ms. Hunt left Ms. Vega a voicemail informing Plaintiff that she would no longer report to her. Instead, she would report directly to Mr. Asplund. Of course, this could only make the problem worse.

71.     Under such circumstances, Honeywell had made it unmistakably clear that Mr. Asplund could with impunity continue to subject Ms. Vega to harassment and mistreatment because she was a woman who demanded equitable compensation and terms and conditions of employment. Because Ms. Vega's stress, anxiety, and other physical manifestations of Honeywell's discriminatory treatment became more than she could bare, she had no choice but to resign. Accordingly, she was constructively discharged on October 6, 2017.

72.     Mr. Asplund's unrelenting discriminatory and retaliatory treatment of Plaintiff, compounded by Honeywell's unwillingness to take any steps to prevent, stop, or remedy his conduct have caused Plaintiff substantial economic damages. Simply because of her gender, Ms. Vega received unjustifiably low pay for more than 3 years and the trajectory of her career was significantly slowed by being denied employment opportunities that were made readily available to less qualified men. Plaintiff seeks economic damages to compensate her for these harms.

**H. Honeywell's Misconduct Caused Plaintiff's Severe Emotional Distress.**

73.     In addition to causing her economic damage and harming her career, Honeywell's discrimination and retaliation against Plaintiff severely harmed her mental and physical health, causing her to suffer debilitating depression and anxiety, which has impacted

- 15 -
COMPLAINT

1    every aspect of her life. As of the filing of this Complaint—more than a year after she resigned

2    from her job at Honeywell—Plaintiff continues to suffer from these harms.

3         74.    Prior to the onset of Honeywell's discriminatory mistreatment of her in 2014, Ms.

4    Vega never had mental health issues of any kind. She was a healthy, fit woman, happily married

5    and devoted to both her job and her family. She had never experienced depression or anxiety; she

6    had never sought mental health treatment of any kind.

7         75.    Ms. Vega first experienced physical manifestations of the tremendous stress she

8    experienced under Honeywell's unjustifiable acts in or around January 2015. Shortly after the

9    failed salary negotiations with Mr. Asplund, Plaintiff developed extremely painful ulcers in her

10   mouth that required dental attention. The dentist that saw Ms. Vega for this condition explained

11   that it develops in people who are under great amounts of stress.

12        76.    In March 2017, Plaintiff became pregnant with her second child.

13        77.    In or around July 2017, after bearing the brunt of gender discrimination and

14   retaliation perpetrated by her employer for a protracted period of time, Plaintiff began

15   experiencing severe anxiety and depression as a result of the stress she endured each and every

16   day working at Honeywell.

17        78.    On July 17, 2017, Ms. Vega's obstetrician, Dr. Piacquadio, observed that she was

18   under tremendous stress associated with workplace discrimination. Dr. Piacquadio referred

19   Plaintiff to Counselor Lisa Vitale, MFT, who provided Plaintiff with therapy and treatment to

20   help her cope with her traumatic work environment.

21        79.    On August 24, 2017, Plaintiff experienced her first ever panic attack. Ms. Vega

22   was at Honeywell's Poway facility when she became overwhelmed with feelings of betrayal and

23   neglect by her employer. She felt unsafe and had the urge to run away. Intense feelings of panic

24   and difficulty breathing seized her body for a terrifying one-hour long ordeal. This incident was

25   brought on by HR's refusal to accommodate her reasonable request to be shielded from Mark

26   Asplund during the course of its investigation into the timecard dispute. Following this

27

28

COMPLAINT

1   frightening experience, Counselor Lisa Vitale, MTF, excused Ms. Vega from work for one week

2   on August 25, 2017.

3       80.     Ms. Vega began suffering from anxiety attacks on a regular basis. She was

4   plagued by intrusive thoughts of driving off the road while commuting to work. The frequency of

5   Ms. Vega's panic and anxiety attacks at work prevented her from fully executing her duties.

6       81.     On September 9, 2017, Dr. Brenda Ericsson M.D., diagnosed Ms. Vega with

7   Adjustment Disorder with Anxiety and Depressed Mood.

8       82.     Shortly after leaving Honeywell, Ms. Vega was hired by ViaSat, in Carlsbad, CA

9   as a Systems Quality Engineer. Ms. Vega began working at ViaSat on October 9, 2017.

10  However, the trauma of her experience at Honeywell prevented her from fully engaging with this

11  new job.

12      83.     Ms. Vega gave birth to her second child in December of 2017 and developed

13  post-partum depression; her anxiety worsened soon thereafter. The severity of her symptoms

14  worsened steadily.

15      84.     By March of 2018, Ms. Vega had returned to work at ViaSat but struggled

16  because her mental state was declining as memories of Honeywell's discriminatory actions

17  became extremely triggering. Ms. Vega would later learn that she was suffering from Post-

18  Traumatic Stress Disorder (PTSD); she was re-traumatized each time she thought of Honeywell.

19      85.     Ms. Vega's precipitous decline in mental health led her to seek out Shanna

20  Wilson, MFT on April 28, 2018. Seeing the severity of Plaintiff's mental condition, Ms. Wilson

21  referred Ms. Vega to Dr. Allison Reminick at the UCSD Maternal Mental Health Clinic, who

22  formally diagnosed Ms. Vega with PTSD.

23      86.     On June 30, 2018, Dr. Reminick referred Plaintiff to an intensive outpatient

24  program at UCSD where she began attending sessions approximately three times per week.

25      87.     Dr. Reminick concluded that extreme stress in connection with active workplace

26  discrimination and retaliation at Honeywell was the primary contributing factor of Ms. Vega's

27  condition.

28

COMPLAINT

88.   The impact of Honeywell's misconduct on Plaintiff's mental health has been devastating: Plaintiff experiences generalized, debilitating depression and anxiety; she regularly exists in a state of "fogginess" and notes that her cognitive abilities and information processing have slowed significantly; her daily life is impaired in almost every way, from difficulty in performing simple daily tasks and diminished self-esteem, to problems in her family and social relationships.

89.   After being diagnosed with "generalized anxiety disorder in the post-partum period and PTSD" in July 2018, Plaintiff went on medical leave and sought intensive outpatient treatment for her condition.

90.   Ms. Vega engaged in an intensive three-month therapy program, which included three daily group therapy sessions, individual therapy sessions, eye movement desensitization and reprocessing treatments, and consultations with physicians. In late October, Plaintiff and her physicians determined that she was ready to return to work on a part-time basis. She has been a part-time employee at ViaSat since October 24, 2018.

91.   Plaintiff tentatively plans to return to full-time work in February 2019, however, she remains wary of the possibility of a relapse. Even at her new job at ViaSat, where her work environment is a stark contrast to the toxicity she experienced at Honeywell, Ms. Vega continues to struggle with feelings of intense mistrust, irritability, and hypervigilance.  She feels angry and betrayed by how Honeywell "pulled the rug out from under her," leading to acute feelings of self-doubt and panic that threaten to take her off her carefully calibrated path of recovery. Ms. Vega's recovery is, indeed, delicate and threatened by triggering memories of Honeywell's wrongdoing.

92.   Ms. Vega lives with the enduring legacy of the trauma that Honeywell inflicted upon her, and she has not fully recovered. Her efforts to return to a sense of normalcy are actively hampered by the mental illnesses she developed after the traumatic events that Honeywell put her through. Plaintiff seeks noneconomic damages in order to compensate her for the devastating effect of Honeywell's illegal actions on her life and well-being.

**FIRST CAUSE OF ACTION**

**GENDER AND MATERNITY ("SEX-PLUS") DISCRIMINATION**

**in Violation of the California Fair Employment & Housing Act,**

**Cal. Gov. Code § 12940, *et seq*.**

93.    Plaintiff re-alleges and incorporates each and every allegation in this Complaint.

94.    Honeywell discriminated against Plaintiff in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940, *et seq.*, by subjecting her to different treatment because and on the basis of her gender, including her status as a mother and caregiver of her children, by engaging in intentional disparate treatment and by maintaining policies and practices that had an adverse, disparate impact on her.

95.    Honeywell subjected Plaintiff to adverse employment actions by treating her differently and less favorably because of her gender. For example, Honeywell openly denied Plaintiff employment and advancement opportunities because she is a woman. Honeywell also forced Plaintiff to perform substantial additional work outside of her formal job duties without a commensurate increase in pay. Honeywell subjected Plaintiff to increased scrutiny and higher demands than her male counterparts for no legitimate non-gender-related reason.

96.    Honeywell also discriminated against Plaintiff because of her status as a mother and caregiver of her children. Despite Plaintiff's clear request for advance notice regarding any request that she work outside of normal business hours in order to give her a chance to arrange for childcare, Plaintiff's supervisors repeatedly assigned her late-night and weekend work without any advance warning. Plaintiff's supervisors also made harassing and disparaging comments to and about Plaintiff, targeting her for being a woman and a mother.

97.    Honeywell discouraged Plaintiff from complaining about or attempting to remedy the discrimination, explaining that any such complaint or attempt would be considered an example of her failure to fully commit to her career.

- 19 -

COMPLAINT

98.     Honeywell's severe and pervasive discrimination against Plaintiff based on her gender created to a hostile work environment, which negatively impacted Plaintiff's working conditions for a period of years.

99.     Ultimately, Honeywell's hostile work environment resulted in Plaintiff's constructive discharge from her position at the Company.

100.     Honeywell engaged in an intentional, systemic policy, pattern, and/or practice of discrimination against Plaintiff based on her gender and her status as a mother and caregiver, by, among other things: maintaining a discriminatory system for compensation, maintaining a discriminatory system for promotions, unwarrantedly suppressing pay, promotions, and professional development, and other forms of discrimination.

101.     These policies, practices, and/or procedures produced an unjustified disparate impact on Plaintiff with respect to the terms and conditions of her employment because she is a woman and because she had childcare responsibilities.

102.     As a result of this disparate treatment and disparate impact discrimination, Honeywell treated Plaintiff differently from and less preferentially than similarly-situated male employees with respect to pay and promotions.

103.     Honeywell failed to prevent, respond to, adequately investigate, and/or appropriately resolve this gender discrimination.

104.     Honeywell's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Plaintiff's right, entitling Plaintiff to punitive damages.

105.     As a result of Honeywell's conduct alleged in this Complaint, Plaintiff suffered and continues to suffer harm, including but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial loss.

106.     As a further result of Honeywell's unlawful conduct, Plaintiff suffered and continues to suffer, *inter alia*, impairment to her name and reputation, humiliation, embarrassment, severe emotional and physical distress, and mental anguish.

107.    By reason of the continuous nature and impact of Honeywell's discriminatory conduct, which persisted throughout Plaintiff's employment, the continuing violations doctrine applies to all violations alleged herein.

108.    By reason of Honeywell's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of the FEHA, including an award of compensatory and punitive damages.

109.    Attorneys' fees should be awarded under Cal. Gov't Code § 12965(b).

### SECOND CAUSE OF ACTION

### DENIAL OF EQUAL PAY

**in Violation of the California Equal Pay Act, Cal. Lab. Code § 1197.5, *et seq.***

110.    Plaintiff re-alleges and incorporates each and every allegation in this Complaint.

111.    Honeywell discriminated against Plaintiff in violation of the California Equal Pay Act ("CEPA"), Cal. Lab. Code § 1197.5, *et seq.* as amended by the California Fair Pay Act. Honeywell has paid Plaintiff less than similarly-situated male employees in the same establishment performing equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

112.    Honeywell subjected Plaintiff to discriminatory pay policies, including: maintaining a discriminatory system of determining compensation; maintaining a discriminatory system for promotions; and other forms of discrimination affecting pay.

113.    The differential in pay for Plaintiff was not due to a legitimate seniority system, merit, or the quantity or quality of production, a bona fide factor other than sex, such as education, training, or experience, but was due to gender. In the alternative, to the extent that Honeywell relied upon one or more of these factors, such factors were not reasonably applied and did not account for the entire wage differential.

114.    Because the foregoing conduct constitutes a willful violation of CEPA, a three-year statute of limitations applies to such violations. Cal. Lab. Code § 1197.5(h).

115.    As a result of Honeywell's conduct alleged in this Complaint and/or Honeywell's willful, knowing, and intentional discrimination, Plaintiff suffered and will continue to suffer harm, including but not limited to lost earnings, lost benefits, and other financial loss.

116.    As a further result of Honeywell's unlawful conduct, Plaintiff suffered and continues to suffer, *inter alia*, impairment to her name and reputation, humiliation, embarrassment, severe emotional and physical distress, and mental anguish.

117.    Plaintiff is therefore entitled to all legal and equitable remedies available under CEPA, including doubled compensatory awards for all willful violations.

118.    Attorneys' fees should be awarded under California Labor Code § 1197.5(g), (h).

### THIRD CAUSE OF ACTION

### RETALIATION

**in Violation of the California Fair Employment & Housing Act, Cal. Gov. Code § 12940(h).**

119.    Plaintiff realleges and incorporates each and every allegation in this Complaint.

120.    Plaintiff complained to her supervisors and human resources officers about Honeywell's discriminatory acts of requiring her to perform additional work without commensurate pay and excluding her from employment opportunities. These complaints constitute protected activity as defined in FEHA, Cal. Gov't Code § 12940(h).

121.    Immediately after Plaintiff's protected activity, Honeywell retaliated against her by making unfounded and damaging accusations and opening a frivolous investigation intended to humiliate and harass her.

122.    Honeywell imposed these additional adverse employment actions on Plaintiff, at least in part, as a result of Plaintiff's protected activities.

123.    These additional adverse employment actions contributed to the hostile work environment that Plaintiff endured at Honeywell, ultimately culminating in Plaintiff's constructive discharge form her position at the Company.

124.    Honeywell failed to prevent, respond to, adequately investigate, and/or appropriately resolve this gender discrimination.

COMPLAINT

125.    Honeywell's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Plaintiff's right, entitling Plaintiff to punitive damages.

126.    As a result of Honeywell's conduct alleged in this Complaint, Plaintiff suffered and continues to suffer harm, including but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial loss.

127.    As a further result of Honeywell's unlawful conduct, Plaintiff suffered and continues to suffer, *inter alia*, impairment to her name and reputation, humiliation, embarrassment, severe emotional and physical distress, and mental anguish.

128.    By reason of the continuous nature of Honeywell's discriminatory conduct, which persisted throughout Plaintiff's employment, the continuing violations doctrine applies to all violations alleged herein.

129.    By reason of Honeywell's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of the FEHA, including an award of compensatory and punitive damages.

130.    Attorneys' fees should be awarded under Cal. Gov't Code § 12965(b).

## FOURTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

131.    Plaintiff realleges and incorporates each and every allegation of this Complaint.

132.    Honeywell's conduct against Plaintiff was so extreme and outrageous that it exceeded all bounds of decency beyond that usually tolerated in a civilized community.

133.    Honeywell abused its position of power and authority over Plaintiff as Plaintiff's employer, knowing that Plaintiff was particularly vulnerable to emotional distress and knowing that its conduct would likely result in harm due to mental distress.

134.    Honeywell intended to cause Plaintiff emotional distress and/or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress.

- 23 -

COMPLAINT

135.     Plaintiff suffered severe or extreme emotional distress, including but not limited to anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame, which endured for more than 18 months.

136.     Honeywell's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

**FIFTH CAUSE OF ACTION**

**GENDER AND MATERNITY DISCRIMINATION**

**in Violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),**

**42 U.S.C. § 2000e, *et seq*.**

137.     Plaintiff realleges and incorporates each and every allegation of this Complaint.

138.     Honeywell, Plaintiff's employer within the meaning of Title VII, discriminated against Plaintiff in violation of Title VII by subjecting her to different treatment on the basis of her gender, including by engaging in intentional disparate treatment and by maintaining policies and practices that had an adverse, disparate impact on her.

139.     Honeywell subjected Plaintiff to adverse employment actions by treating her differently and less favorably because of her gender. For example, Honeywell openly denied Plaintiff employment and advancement opportunities because of she is a woman. Honeywell also forced Plaintiff to perform substantial additional work outside of her formal job duties without a commensurate increase in pay. Honeywell subjected Plaintiff to increased scrutiny and higher demands than her male counterparts for no legitimate non-gender-related reason.

140.     Honeywell also discriminated against Plaintiff because of her status as a mother and caregiver of her children. Despite Plaintiff's clear request for advance notice for any request that she work outside of normal business hours in order to give her a chance to arrange for childcare, Plaintiff's supervisors repeatedly assigned her late-night and weekend work without any advance warning. Plaintiff's supervisors also made harassing and disparaging comments to and about Plaintiff, targeting her for being a woman and a mother.

141.    Honeywell discouraged Plaintiff from complaining about or attempting to remedy the discrimination, explaining that any such complaint or attempt would be considered an example of her failure to fully commit to her career.

142.    Honeywell's severe and pervasive discrimination against Plaintiff based on her gender created to a hostile work environment, which negatively impacted Plaintiff's working conditions for a period of years.

143.    Ultimately, Honeywell's hostile work environment resulted in Plaintiff's constructive discharge from her position at the Company.

144.    Honeywell engaged in an intentional, systemic policy, pattern, and/or practice of discrimination against Plaintiff based on her gender and her status as a mother and caregiver, by, among other things: maintaining a discriminatory system for compensation, maintaining a discriminatory system for promotions, unwarrantedly suppressing pay, promotions, and professional development, and other forms of discrimination.

145.    Honeywell engaged in an intentional, systemic policy, pattern, and/or practice of discrimination against Plaintiff by, among other things: maintaining a discriminatory system of determining compensation; maintaining a discriminatory system for promotions; discriminating against Plaintiff in pay and promotions; discriminatorily denying development and advancement opportunities; and other forms of discrimination.

146.    These policies, practices, and/or procedures produced an unjustified disparate impact on Plaintiff with respect to the terms and conditions of her employment because she is a woman and because she had maternity and childcare responsibilities.

147.    As a result of this disparate treatment and disparate impact discrimination, Honeywell treated Plaintiff differently from and less preferentially than similarly-situated male employees with respect to pay and promotions.

148.    Honeywell failed to prevent, respond to, adequately investigate, and/or appropriately resolve this gender discrimination.

COMPLAINT

149.   Honeywell's conduct was intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of Plaintiff's right, entitling Plaintiff to punitive damages.

150.   As a result of Honeywell's conduct alleged in this Complaint, Plaintiff suffered and continues to suffer harm, including but not limited to, lost earnings, lost benefits, lost future employment opportunities, and other financial loss.

151.   As a further result of Honeywell's unlawful conduct, Plaintiff suffered and continues to suffer, *inter alia*, impairment to her name and reputation, humiliation, embarrassment, severe emotional and physical distress, and mental anguish. Plaintiff is entitled to recover damages for such injuries from Honeywell under Title VII.

152.   By reason of the continuous nature of Honeywell's discriminatory conduct, which persisted throughout Plaintiff's employment, the continuing violations doctrine applies to all violations alleged herein.

153.   By reason of Honeywell's discrimination, Plaintiff is entitled to all legal and equitable remedies available for violations of Title VII.

154.   Attorneys' fees and costs should be awarded under 42 U.S.C. § 2000e-5(k).

### SIXTH CAUSE OF ACTION

### RETALIATION

### in Violation of Title VII, U.S.C. § 2000e-3(a).

155.   Plaintiff realleges and incorporates each and every allegation contained in this Complaint.

156.   Plaintiff engaged in protected activity that included, but is not limited to, complaining to about gender and maternity discrimination in compensation, promotion, and working conditions. She complained to Honeywell personnel on numerous occasions, including but not limited to human resources representatives and her supervisors.

157.   Honeywell retaliated against Plaintiff by, *inter alia*, making harassing and disparaging comments to her and about her, making unfounded accusations of time-card fraud against her, conducting a specious and damaging investigation of that accusation, and returning

1  the subject of her well-founded complaints of discrimination and retaliation to her chain of

2  command. These adverse employment actions materially and adversely changed the terms and

3  conditions of Plaintiff's employment. Ultimately, Honeywell's discrimination and retaliation

4  resulted in the constructive termination of Plaintiff's employment.

5       158.   Honeywell's retaliatory acts against Plaintiff were a direct and proximate result of

6  her protected activities.

7       159.   A reasonable employee would find Honeywell's retaliatory acts materially

8  adverse and such acts would dissuade a reasonable person from making or supporting a charge of

9  discrimination.

10       160.   Honeywell's conduct has been intentional, deliberate, willful, malicious, reckless,

11  and conducted in callous disregard to Plaintiff's rights, entitling her to punitive damages.

12       161.   Honeywell's actions and failures to act have caused Plaintiff to suffer harm,

13  including without limitation lost earnings, lost benefits, and other severe financial losses, as well

14  as humiliation, embarrassment, emotional and physical distress, and mental anguish.

15       162.   Plaintiff entitled to all legal and equitable remedies available for violations of

16  Title VII, including an award of punitive damages.

17       163.   Attorneys' fees should be awarded under 42 U.S.C. § 2000e-5(k).

18  **SEVENTH CAUSE OF ACTION**

19  **DENIAL OF EQUAL PAY**

20  **in Violation of the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of**

21  **1963, 29 U.S.C. § 206(d); 29 U.S.C. § 216(b).**

22       164.   Plaintiff re-alleges and incorporates each and every allegation of this Complaint.

23       165.   Honeywell is Plaintiff's "employer," and Plaintiff is an "employee" of

24  Honeywell, within the meaning of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206, *et*

25  *seq.*, as amended by the Equal Pay Act of 1963 ("EPA").

26

27

28

- 27 -

COMPLAINT

166.   Honeywell has discriminated against Plaintiff in violation of the EPA by paying her less than similarly situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

167.   The differential in pay between Plaintiff and similarly situated male partners was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was due to sex.

168.   Honeywell caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on sex in violation of the EPA.

169.   A three-year statute of limitations applies to Honeywell's willful acts of paying Plaintiff less than similarly situated male employees under 29 U.S.C. § 255(a).

170.   As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including, but not limited to, lost earnings, lost benefits, and other financial losses, as well as non-economic damages, including emotional and physical distress, humiliation, embarrassment, and mental anguish.

171.   Plaintiff is entitled to all legal and equitable remedies available for violations of the Equal Pay Act, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## EIGHTH CAUSE OF ACTION

### RETALIATION

### in Violation of the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of 1963, 29 U.S.C. § 215(a)(3); 29 U.S.C. § 216(b).

172.   Plaintiff re-alleges and incorporates each and every allegation contained in this Complaint.

173.   Plaintiff engaged in protected activity as defined by the EPA by complaining to Honeywell about gender discrimination in compensation.

174.   Because of these complaints, Honeywell retaliated against Plaintiff by making harassing and disparaging comments to her and about her, making unfounded accusations of time-card fraud against her, conducting a specious and damaging investigation of that accusation, and returning the subject of her well-founded complaints of discrimination and retaliation to her chain of command. These adverse employment actions materially and adversely changed the terms and conditions of Plaintiff's employment in violation of 29 U.S.C. § 215(a)(3).

175.   Honeywell further retaliated against Plaintiff by facilitating and tolerating an environment where she was targeted for harassment and humiliation by Company leadership. Ultimately, Honeywell's misconduct resulted in the constructive termination of Plaintiff's employment.

176.   Under 29 U.S.C. § 216(b), Plaintiff is entitled to back pay, liquidated damages, and other relief.  Attorneys' fees should be awarded under 29 U.S.C. § 216(b).

## NINTH CAUSE OF ACTION

### WRONGFUL CONSTRUCTIVE TERMINATION OF EMPLOYMENT

### in Violation of Public Policy; Labor Code § 1102.5; FEHA,

### Government Code § 12900, *et seq.*

177.   Plaintiff re-alleges and incorporates each and every allegation contained in this Complaint.

178.   Honeywell subjected Plaintiff to working conditions that violated public policy, in that Plaintiff was, *inter alia*, forced to take on additional work duties including managerial responsibilities without any commensurate adjustment to her compensation; derided, humiliated and harassed for requesting advance notice for late-night and weekend work assignments based on her caregiving duties, subjected to unfounded accusations of time-card fraud against her and a specious and damaging investigation of that accusation, and placed back in the chain of command of the subject of her well-founded complaints of discrimination and retaliation.

179.   Honeywell intentionally created and knowingly permitted these working conditions.

COMPLAINT

180.   Honeywell subjected Plaintiff to working conditions that were so intolerable that a reasonable person in Plaintiff's position would have no reasonable alternative except to resign.

181.   Left with no other reasonable choice, Plaintiff resigned because of the intolerable and unsustainable working conditions to which she was subjected.

182.   Plaintiff's discriminatory and retaliatory working conditions were a proximate cause of and a substantial factor in causing Plaintiff's harm. Plaintiff has suffered and continues to suffer severe emotional distress, depression, anxiety, and mental and physical pain and anguish, all to her damage in a sum according to proof.

183.   As a result of Honeywell's constructive termination of Plaintiff's employment, Plaintiff has suffered general and special damages in sums according to proof.

184.   Honeywell's constructive termination of Plaintiff's employment was done intentionally, in a malicious, fraudulent, oppressive, fraudulent manner, entitling Plaintiff to punitive damages.

185.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

186.   Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq.*, Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

187.   Award back pay, front pay, lost benefits, and other damages for lost compensation and job benefits suffered by Plaintiff.

188.   Award nominal, compensatory, and punitive damages to Plaintiff;

189.   Award nominal and liquidated damages to Plaintiff in the maximum amount available under the Equal Pay Act;

190.   Order Defendant to make Plaintiff whole by providing her with any other monetary and equitable relief the Court deems just;

191.   Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Plaintiff;

COMPLAINT

192.    Award Plaintiff all pre-judgment interest and post-judgment interest available under law;

193.    Award Plaintiff any other appropriate equitable relief;

194.    Order that this Court retain jurisdiction of this action until such time as the Court is satisfied that Defendant has remedied the practices complained of herein and are determined to be in full compliance with the law; and

195.    Award additional and further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Pursuant to Article I, § 16 of the California Constitution, Plaintiff demands a trial by jury on all issues triable of right by jury.

Dated: January 7, 2019

Respectfully submitted,

Felicia M. Gilbert (SBN 276348)
Edward D. Chapin (SBN 53287)
Cara W. Van Dorn (SBN 321669)
SANFORD HEISLER SHARP, LLP

*Attorneys for Plaintiff Julia Vega*

- 31 -
COMPLAINT

# Exhibit 1

EEOC Form 161-B (11/16)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:   Julia Vega<br>        1829 South Pacific Street<br>        Oceanside, CA 92054 | From:   San Diego Local Office<br>          555 W. Beech Street<br>          Suite 504<br>          San Diego, CA 92101 |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **488-2018-00564** | **Garrett D. Hoover,<br>Supervisor** | **(619) 557-7288** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

_____
**Christopher S. Green,**
**Local Office Director**

3/29/18
*(Date Mailed)*

cc:

Sharon Weight
Paralegal
HONEYWELL INTERNATIONAL INC
1944 E Sky Harbor Circle North
Phoenix, AZ 85034

Jill Sullivan Sanford, Esq.
SANFORD HEISLER SHARP LLP
111 Sutter Street, Suite 975
San Francisco, CA 94104

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** — **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** — **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** — **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** — **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# Exhibit 2



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GOVERNOR GAVIN NEWSOM

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    DIRECTOR KEVIN KISH

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 7, 2019

Edward Chapin
655 West Broadway Suite 1700
San Diego, California 92101

RE:   **Notice to Complainant's Attorney**
      DFEH Matter Number: 201901-04713507
      Right to Sue: VEGA / HONEYWELL INTERNATIONAL, INC. et al.

Dear Edward Chapin:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GOVERNOR GAVIN NEWSOM

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                              DIRECTOR KEVIN KISH

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 7, 2019

RE:     **Notice of Filing of Discrimination Complaint**
        DFEH Matter Number: 201901-04713507
        Right to Sue: VEGA / HONEYWELL INTERNATIONAL, INC. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GOVERNOR GAVIN NEWSOM

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

DIRECTOR KEVIN KISH

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

January 7, 2019

JULIA VEGA
C/O EDWARD CHAPIN 655 W BROADWAY STE 1700 SAN DIEGO, CA 92101
, California

RE:  **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 201901-04713507
Right to Sue: VEGA / HONEYWELL INTERNATIONAL, INC. et al.

Dear JULIA VEGA,

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
January 7, 2019 because an immediate Right to Sue notice was requested. DFEH will
take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**
JULIA VEGA                                    DFEH No. 201901-04713507

                         Complainant,

vs.

HONEYWELL INTERNATIONAL, INC.
101 Columbia Road
Morristown, New Jersey 07962

HONEYWELL AEROSPACE
2338 West Royal Palm Road Suite J
Phoenix, Arizona 85021

                         Respondents
_____

1. Respondent **HONEYWELL INTERNATIONAL, INC.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **JULIA VEGA**, resides in the City of  State of **California.**

3. Complainant alleges that on or about **October 6, 2017**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's sex/gender and as a result of the discrimination was forced to quit, denied hire or promotion, denied equal pay, denied a work environment free of discrimination and/or retaliation, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was forced to quit, denied hire or promotion, denied equal pay, denied a work environment free of discrimination and/or retaliation, other.

-1-
*Complaint – DFEH No. 201901-04713507*

Date Filed: January 7, 2019

**Additional Complaint Details:** See complaint dual-filed with the EEOC and FEHA on March 26th, 2018.

A summary of events is as follows:

I.       INTRODUCTION

1.       Plaintiff, a well-educated, high performing electrical engineer, endured years of unfair, sexist treatment at Honeywell Aerospace, which impeded her career, cost her thousands of dollars in unpaid wages, and ultimately caused her severe and debilitating emotional distress.

2.       Working under male leadership that viewed women as less valuable and capable employees, Ms. Vega was routinely denied basic job opportunities, creating a consistent drag on the progress of her career and slowing her advancement within the Company.  Honeywell management also specifically excluded Ms. Vega from a major business opportunity expressly because of her gender.  Major decisions regarding promotions were similarly tainted by gender bias.  Ms. Vega's supervisor attempted to pressure her into accepting a promotion in name only, expecting her to assume additional responsibilities and perform managerial tasks with no corresponding increase in pay.

3.       Honeywell management made clear by words and action, that working mothers were considered inferior, undedicated employees.  Women were derided for requesting advance notice prior to working weekends in order to find childcare and such requests were flatly ignored.  Certain of Plaintiff's supervisors seemed to take pleasure in approaching her on a Friday afternoon to demand that she work the following day.

4.       Honeywell's unjust and illegal conduct took a significant toll on Ms. Vega, causing her to develop severe mental health and stress-related issues.  Plaintiff's attempts to complain about these clear instances of discrimination provided no remedy, as Honeywell's perfunctory investigations found nothing improper had occurred, and no decisionmakers were punished. Instead, Plaintiff's supervisors were permitted to retaliate against her, ultimately forcing her to resign from Honeywell entirely. Plaintiff continues to struggle to cope with the economic, physical, and emotional damage caused by Honeywell's actions to this day.

5.       To remedy the injuries Plaintiff suffered as a result of Honeywell's illegal and outrageous conduct in discriminating against her based on her gender and in retaliating against her after complained, Plaintiff brings this action for damages alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 206, et seq., as

Date Filed: January 7, 2019

1  amended by the Equal Pay Act of 1963 ("EPA"), the California Fair Employment and
   Housing Act, Cal. Lab. Code § 12940 et seq. ("FEHA"), and the California Equal Pay
2  Act, Cal. Lab. Code § 1197.5 ("CEPA"), as well as causes of action for intentional
   infliction of emotional distress and constructive discharge.
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                           -3-
                              *Complaint – DFEH No. 201901-04713507*
28
   Date Filed: January 7, 2019

1  VERIFICATION

2  I, **Edward Chapin**, am the **Attorney** in the above-entitled complaint.  I have read the
3  foregoing complaint and know the contents thereof.  The matters alleged are based
   on information and belief, which I believe to be true.

4
   On January 7, 2019, I declare under penalty of perjury under the laws of the State of
5  California that the foregoing is true and correct.

6                                                          **San Diego, CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                         -4-
27  ─────────────────────────────────────────────────────────────
                    *Complaint – DFEH No. 201901-04713507*
28  Date Filed: January 7, 2019

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Edward D. Chapin (SBN: 53287), Cara Van Dorn (SBN: 321669)<br>Felicia M. Gilbert (SBN 276348)<br>SANFORD HEISLER SHARP, LLP<br>655 W BROADWAY SUITE 1700, SAN DIEGO, CA 92101<br>TELEPHONE NO.: 619-577-4253    FAX NO.: 619-577-4250<br>ATTORNEY FOR *(Name):* Plaintiff | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**01/07/2019** at 11:41:30 PM<br><br>Clerk of the Superior Court<br>By Gen Dieu,Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 330 W Broadway
MAILING ADDRESS: 330 W Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central

CASE NAME:
Julia Vega v. Honeywell International Incorporated

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER:<br>37-2019-00001046-CU-OE-CTL |
|---|---|---|
| ✔ Unlimited    ☐ Limited<br>(Amount      (Amount<br>demanded    demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ Counter   ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Gregory W Pollack<br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) |    condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ✔ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ✔ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more courts
    issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✔ monetary    b. ✔ nonmonetary; declaratory or injunctive relief    c. ✔ punitive
4. Number of causes of action *(specify):* 9
5. This case ☐ is ✔ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 01/07/2019
Felicia M. Gilbert
_____     ► _____
(TYPE OR PRINT NAME)                                  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2019-00001046-CU-OE-CTL      CASE TITLE: Vega vs Honeywell International Inc [IMAGED]

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
> (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
> (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
> (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>☐ CENTRAL DIVISION, HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101<br>☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020<br>☐ EAST COUNTY DIVISION, RAMONA, 1428 MONTECITO RD., RAMONA, CA 92065<br>☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081<br>☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910 | *FOR COURT USE ONLY* |
|---|---|
| PLAINTIFF(S) | ASSIGNED JUDGE |
| DEFENDANT(S) | DEPT |
| **STIPULATION TO USE ALTERNATIVE<br>DISPUTE RESOLUTION (ADR)** | SUPERIOR COURT CASE NUMBER |

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)
☐ Mediation (private)
☐ Voluntary settlement conference (private)
☐ Neutral evaluation (private)

☐ Non-binding private arbitration
☐ Binding private arbitration
☐ Non-binding judicial arbitration (discovery until 15 days before trial)
☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other *(specify e.g., private mini-trial, private judge, etc.):* _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral:  *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____        Date: _____

_____        _____
Name of Plaintiff                                        Name of Defendant

_____        _____
Signature                                                  Signature

_____        _____
Name of Plaintiff's Attorney                         Name of Defendant's Attorney

_____        _____
Signature                                                  Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Date: _____        _____
                                                          Judge of the Superior Court

| SDSC CIV-359 (Rev. 12/10) | **STIPULATION TO USE<br>ALTERNATIVE DISPUTE RESOLUTION (ADR)** | Cal. Rules of Court, rule 3.1385 |
|---|---|---|

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7071 |

PLAINTIFF(S) / PETITIONER(S):  Julia Vega

DEFENDANT(S) / RESPONDENT(S):  Honeywell International Inc

VEGA VS HONEYWELL INTERNATIONAL INC [IMAGED]

| NOTICE OF CASE ASSIGNMENT and CASE MANAGEMENT CONFERENCE | CASE NUMBER: 37-2019-00001046-CU-OE-CTL |
|---|---|

## CASE ASSIGNMENT

Judge:  Gregory W Pollack                                       Department: C-71

**COMPLAINT/PETITION FILED:** 01/07/2019

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 06/14/2019 | 01:30 pm | C-71 | Gregory W Pollack |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES:  In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).



# Superior Court of California
# County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

**Page: 2**