1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Julia VEGA,<br><br>                              Plaintiff,<br><br>v.<br><br>HONEYWELL INTERNATIONAL,<br>INC.,<br><br>                              Defendant. | Case No.:  19-cv-00663-W-BGS<br><br>**ORDER ON DISCOVERY DISPUTES**<br>**RE INTERROGATORIES 11, 13 AND**<br>**REQUEST FOR PRODUCTION 19**<br><br>**[ECF NO. 42]** |

## I.    Introduction

The Court ordered the parties to submit a Joint Statement addressing their disputes as to Interrogatory #11, Interrogatory #13, and Request for Production #19. (ECF No. 41.)  The Parties were to address the relevancy of the discovery, as well as proportionality.  *Id.* at 2.  On March 6, 2020 the parties filed their Joint Statement of Discovery Disputes. (ECF No. 42.)  The Court will address the parties' positions during the analysis of the disputes.

## II.   Legal Standard

A party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Factors to consider include "the importance of the issues at stake in the

action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Information need not be admissible in evidence to be discoverable. *Id.* However, a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

The Advisory Committee emphasized that in adding the proportionality language to Rule 26(b)(1) "the objective is to guard against redundant or disproportionate discovery" and "to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26, Advisory Committee's note to 2015 amendment.

The test for Relevant Evidence is defined in Federal Rule of Evidence 401 which provides: "Evidence is relevant if (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

## III.    Analysis

### A. Dispute regarding Interrogatory #11

The original Interrogatory #11, (ECF No. 42-1 at 15–16) provides: "Identify and describe in detail all documents, including but not limited to any surveys, studies, reports, investigations, recommendations, proposals, and/or plans of action, conducted by a former or current Honeywell employee(s), third-party vendor, affiliate, consultant, corporate partner and/or advisor, related to any of the claims in Plaintiff's Complaint."

The Plaintiff asserts that Defendant's responses to the original Interrogatory #11 ("ROG #11") are moot.  (ECF No. 42 at 6.)  The scope of this interrogatory has been

narrowed to only documents related to the hiring and retention of women engineers at Honeywell.  (ECF No. 42 at 6).[1]  Plaintiff has narrowed ROG #11 to request a description of documents related to Honeywell's hiring and retention of women.  (ECF No. 42 at 2.) ROG #11 as narrowed provides:

> "Plaintiff narrows this interrogatory as follows: Identify and describe in detail all documents, including but not limited to any surveys, studies, reports, investigations, recommendations, proposals, and/or plans of action, conducted by a former or current Honeywell employee(s), third-party vendor, affiliate, consultant, corporate partner, and/or advisor, related to Honeywell's hiring and retention of women engineers."  (ECF No. 42-3 at 2.)

Plaintiff contends that this narrowed ROG #11 is highly relevant to her claims of gender discrimination in the terms and conditions of her employment and with respect to her compensation.  (ECF No. 42 at 3.)  In particular, Plaintiff claims that ROG #11 is relevant to her interview for a promotion to a Technical Manager ("TM") position.  *Id.* at 4.  Mark Asplund allegedly offered her this promotion, but there was no corresponding pay increase.  *Id.*  According to the Plaintiff, the information regarding Defendant's hiring and retention of women engineers from 2015 to present is probative of whether any gender disparities existed in managerial roles, and whether this TM position offered to Plaintiff was comparable to the TM roles occupied by other men and women.  *Id.*  And further, Plaintiff contends that this discovery addresses whether the women who were Band 4 employees in engineering were compensated, retained, and/or promoted in a manner comparable to their male counterparts.  *Id.*

---

[1] Notwithstanding, the Court would sustain Defendant's objections to the original ROG #11 on the basis that it is facially overbroad and vague.  (ECF No. 42 at 4–5.)  In particular, the terms "all documents including but not limited to" and "related to any of the claims" would include many documents unrelated to the important issues in the case. *See Vera v. O'Keefe*, No. 10-cv-1422, 2012 WL 896175, *5 (S.D. Cal. Mar. 15, 2012) (explaining that "discovery must be narrowly tailored").

Defendant argues that even this narrowed ROG #11 seeks information well beyond the scope of relevant information. *Id.* at 5. Defendant claims that Plaintiff's allegations are confined to a few specific instances of purported conduct that occurred within a small team of individuals working on a specific product. *Id.* Defendant contends that Plaintiff's allegations in the complaint do not extend to the entire company. *Id.* at 5–6. Additionally, Defendant argues that its hiring and retention of women engineers have no bearing on Plaintiff's claims. *Id.* at 6. Defendant claims that Plaintiff's gender-based discrimination claims regard the assignment of duties and pay by specific individuals in her team and has not pled a failure to hire or promote claim. *Id.*

In her rebuttal, Plaintiff appears to narrow this interrogatory even further to only include ████████████████████████ when Vice President of Engineering Operations Barbara Brockett testified ████████████████████████. *Id.* at 7. Defendant responds in its rebuttal, among other issues,[2] that Plaintiff already has the information responsive to this interrogatory as Ms. Brockett ████████████████████████ ████████████████████████ *Id.* at 8–9. Further, Defendant claims that Plaintiff was offered a managerial position, which she opted not to accept because she did not like the pay. *Id.* at 9.

As to relevancy of the narrowed ROG #11, the issue presented by this dispute is whether or not the identity and description in detail of all documents related to Honeywell's hiring and retention of women engineers tends to make more probable a fact of consequence, i.e., gender discrimination, as alleged in Plaintiff's complaint. *See* Fed. R. Evid. 401. For this analysis, the Court turns to the factual allegations incorporated in all of Plaintiff's claims that regard gender discrimination.

---

[2] Defendant also argues that the two narrowed requests (Exb. 1 and limitation to Ms. Brockett's deposition testimony ████████████████) are in essence a new ROG which is outside the fact discovery deadline. (ECF No. 42 at 8–9.)

Plaintiff's complaint provides "Factual Allegations Common to All Causes of Action." (ECF No. 1-3 at 7.)  Section B of the complaint provides allegations regarding Honeywell's "Discriminatory Culture of Gender Bias." *Id.* at 8–9.  The allegations under this section as regards gender discrimination all involve Senior Technical Manager Mark Asplund ("Asplund"). *See id.*  Plaintiff alleges that Asplund stalled Plaintiff's career when she took this position in 2014. *Id.* at 8.  Plaintiff also alleged that Asplund had misogynistic views of women, believing them to be inferior employees. *Id.*  Plaintiff claims that Asplund effectively cultivated an environment in the HUMS group[3] in which his orders were swiftly carried out unopposed regardless of his plainly discriminatory agenda. *Id.* at 9.

Section C of the complaint discusses how Honeywell allegedly discriminated against Plaintiff with respect to development opportunities. *Id.* at 10–11.  Again, the main culprit at denying Plaintiff from conducting aircraft surveys was Asplund.  She was chosen only once, Asplund and two other decision makers routinely selected male engineers for the job. *See id.*  This alleged discrimination took place in her HUMS group. *Id.* at 10.

Section D of the complaint asserts "Honeywell Discriminated Against Ms. Vega With Respect to Pay and Promotions." *Id.* at 11.  Plaintiff concedes in this section that she was offered a promotion to TM, but in name only. *Id.* at 12.  She would receive no corresponding pay. *Id.*  According to Plaintiff, it was Asplund who refused to offer her the pay increase she deserved. *Id.* at 12–13.  Other members of HUMS management agreed she deserved a pay increase, but they lacked authority to override Asplund's decision. *Id.* at 13.  Further, Plaintiff alleges that Asplund was singularly responsible for

---

[3] HUMS group stands for Helicopter Usage and Monitoring System group.  (ECF No. 1-3 at 8.) According to Plaintiff, it encompassed about 60 employees at facilities in California, Arizona and New Mexico. *Id.*  Plaintiff worked at the Poway location from April 2010 to Oct. 2017 as a Project Engineer and Principal Systems Engineer. *Id.* at 7–8.  Defendant asserts that Plaintiff's particular group was a small team of individuals working on a specific product.  (ECF No. 42 at 5–6.)  Plaintiff does not contest this contention in her Joint Statement.

sinking two important career advancement opportunities solely on account of gender. (ECF No. 1-3 at 13 n.2.)  Asplund's sexism had a marked impact on the trajectory of Plaintiff's career.  *See id.* at 11–14.

Section E of the complaint contends that Honeywell discriminated against Ms. Vega based on her caregiver status.  *Id.* at 14–15.  Plaintiff alleges Asplund rejected all her proposals to allow her child care responsibilities.  *Id.*  Plaintiff claims that Asplund's denials were intended to harass her and put her at a disadvantage as a working mother. *Id.*

Section F of the complaint refers to when TM Melinda Hunt selected the Plaintiff to travel to Spain on a business trip.  *Id.* at 15–16.  A few days later, Plaintiff learned that she had been removed from the trip because she was not a licensed pilot, a requirement for the trip that Plaintiff did not have.  *Id.* at 15.  Although this cancellation did not allegedly involve Asplund, Plaintiff alleges that Asplund had specifically told Ms. Hunt that he did not want plaintiff on that trip.  *Id.* at 16.

Section G of the complaint regards retaliation against Plaintiff for reporting gender discrimination.  *Id.* at 16–18.  Here again the alleged perpetrator of the retaliation is Asplund.  Plaintiff alleged that Asplund improperly initiated a retaliatory investigation of her for alleged time card fraud, where the investigation was done outside of Honeywell's formal procedures and without informing Human Resources that he was doing so.  *Id.*

Section H of the complaint alleges that Asplund caused Plaintiff severe emotional distress.  *Id.* at 18–21.  According to Plaintiff, the physical manifestations of her stress started occurring around January 2015, after the failed salary negotiations with Asplund. *Id.* at 19.

What is obvious from this summary of the factual allegations is that all of the alleged gender discrimination starts and ends with acts done by Asplund.  The gender discrimination and retaliation claims all are directed at Asplund's conduct towards

Plaintiff.[4]  Even the denial of equal pay falls on Asplund's shoulders, since it was he, not the company, who refused to give her a pay increase.[5]  He was also the cause of her severe emotional distress, as well as her alleged constructive discharge.  The Court finds that ROG #11's request for a description of documents concerning Honeywell's hiring and retention policies are not relevant to Plaintiff's claim of gender discrimination.

The Court also finds that ROG #11 is not proportional to the gender discrimination issues, i.e., whether Asplund discriminated against Plaintiff based on her gender.  In her complaint Plaintiff never alleges any hiring discrimination which she experienced by Honeywell.  In fact just the opposite.  *See* (ECF No. 1-3 at 7–8.)  Except for the alleged conduct by Asplund, she does not allege that Honeywell had a discriminatory policy not to promote women.  In fact she was offered the promotion to TM.  *See id.* at 11–13.  And given that all the allegations of discrimination involve Asplund, ROG #11 even as narrowed is overbroad, and places an undue burden on Honeywell.  The important gender discrimination issues in the case regard Asplund.  Any documents regarding Honeywell's hiring and retention are not proportional to alleged gender discrimination by Asplund.

In any event, Plaintiff has further narrowed this request in her rebuttal argument: "Plaintiff is requesting ███████████████████████ VP Brockett ███████ ████████████████████.  (ECF No. 47-1 at 7.)  The parties attached as Exhibit B, relevant portions of her testimony taken at her December 9, 2019 deposition.  (ECF No. 47-2 at 2–18.)  The Plaintiff, at least in the portions the Court was given, ████████ ████████████████████████████████████████████████ ████████████████████████.  *Id.*  At one point ████████████████████████ ████████████████████████████████████████████████████

---

[4] Although Plaintiff alleges that two other decision makers were allegedly involved in denying Plaintiff the trip to Spain, the rationale underlying this order applies equally to this allegation.

[5] However, ROG #11 requests information regarding hiring and retention, not compensation.

1  *Id*. at 8. ██████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████

4  *Id.* █████████████████████████████████████████████████████

5  ████████████  *Id.*

6      Of note, Plaintiff did not bring a discovery dispute regarding any privilege issue.

7  And Ms. Brockett's █████████████████████████████████████

8  ████████████████████████████████████████████████████████

9  ██████. In any event, ████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 █████████████████████████.

12      Thereafter, ████████████████████████████████████████████

13 ████████████████████████████. ██████████████████████████████

14 ████████████████████████████████████████████████████████

15 ███████████. (ECF No. 47-2 at 13.) ██████████████████████████

16 ██████████████████████████████. *Id.* █████████████████████████

17 █████████████████████████████████████████. *Id.* at 13–15.

18      During this examination Plaintiff █████████████████████████

19 ██████████████████████████████████████████████████████████

20 ████████████████████████████████. *Id.* at 14. ████████████████

21 ████████. *Id.* at 15.  The Plaintiff ████████████████████████████

22 ██████████████████████████████████████. *Id.* ██████████████████

23 ██████████████████████████████████. *Id.*  The Plaintiff ██████████

24 ████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████

26 ████████████████████████████. *Id.*  At this point ████████████████

27 ████████████████████████████████████████████████████████

28

1 ████████████████████████████████████████████ *Id.* The

2 parties did not provide the Court with how the witness ultimately answered.

3      Analogous to the previous objection detailed above, the Plaintiff never brought any

4 discovery dispute regarding privilege. Further, ██████████████████████

5 ███████████████████████████████████████████████████.

6 This response would not have included any information from Honeywell's attorneys. It

7 also borders ████████████████████████████████████,

8 which would necessarily be outside the scope of ROG #11. █████████████

9 █████████████████████████████████████

10 █████████████████████.

11      It is clear to the Court that the Plaintiff had the full opportunity to ask the witness

12 questions about the identity and description of the information requested in the narrowed

13 ROG #11. And although the Court has found such questioning outside the factual

14 underpinnings of Plaintiff's complaint, the Court finds that the Defendant has complied

15 with ROG #11 as narrowed. A further deposition would be duplicative/cumulative. *See*

16 Rule 26(b)(2)(C).

17           **B. Dispute regarding Interrogatory #13:**

18      The original Interrogatory #13, (ECF No. 42-1 at 17) requested: "For each of your

19 defenses in this action, identify the factual basis for it and the evidence or information

20 which proves or tends to prove the validity of the defense. In addition, identify any

21 person having knowledge of the factual basis and any document pertaining to or

22 supporting each defense."

23      The Plaintiff has narrowed this request from 48 affirmative defenses

24 to 28 affirmative defenses. (ECF No. 42 at 9–11.) Otherwise the request remains the

25 same. Defendant first objects on the ground that requests for information regarding each

26 affirmative defense identified in Interrogatory #13 ("ROG #13") constitutes a separate

27 and distinct interrogatory. *Id.* at 10–11. Plaintiff has not offered a response to this

28 contention.

Civil Local Rule 33.1 states: "No party will serve on any other party interrogatories which, including discrete subparts, number more than twenty-five interrogatories without leave of court." Civ. L. R. 33.1(a). Federal Rule of Civil Procedure 33 states: "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a).

Rule 33(a) by its express terms makes it clear that every interrogatory which is served, including any discrete subparts, shall be counted against the numerical limit. The numerical limit was added in 1993. Fed. R. Civ. P. 33, Advisory Committee's note to 1993 amendment. Before then, courts acknowledged that "sheer numerosity is not an objection." *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y.1984). As the Advisory Committee explained, "[t]he purpose of this revision is to reduce the frequency and increase the efficiency of interrogatory practice." See Advisory Committee Note to 1993 Amendment to Fed. R. Civ. P. 33, 146 F.R.D. 401, 675 (1993). The amendment was based upon a recognition that, although interrogatories may be a valuable discovery tool, "the device can be costly and may be used as a means of harassment. . . ." *Id.* "The aim [of the numerical limit] is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device." *Id.* at 676.

Although Rule 33(a) states that "discrete subparts" should be counted as separate interrogatories, it does not define that term. An interrogatory with subparts that elicit details concerning the common theme "should be considered a single question," even though "the breadth of an area inquired about may be disputable." *White v. Cinemark USA, Inc.*, No. 04CV0397 GEB CMK, 2005 WL 3881658, at *2–3 (E.D. Cal. Mar. 28, 2005). "On the other hand, an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of the limitation." *Id.* at *3. In *White*, the Court found that asking for "each and every fact" relating to each affirmative

defense should be treated as separate interrogatories since each defense may be both factually and logically different. *Id.*

The Court in *Bovarie v. Schwarzenegger* also held that an interrogatory that seeks a response as to multiple affirmative defenses is counted as a separate interrogatory for each affirmative defense. No. 08CV1661 LAB NLS, 2011 WL 719206, at *2 (S.D. Cal. Feb. 22, 2011). The Court further held that seeking every fact that underlies every affirmative defense is unduly burdensome. *Id.* (citing *Bashkin v. San Diego Cty.,* 2011 WL 109229 at * 2 (S.D. Cal. 2011); *Miles v. Shanghai Zhenhua Port of Mach. Co., LTS.,* 2009 WL 3837523 at * 1 (W.D. Wash. 2009); *Mancini v. Ins. Corp. of New York,* 2009 WL 1765295 at * 3 (S.D. Cal. 2009)).

This Court agrees with these cases and finds that the narrowed ROG #13 limiting the affirmative defenses to 28 is actually 28 separate interrogatories. The Defendant proffered that the 28 interrogatories would exceed the maximum number of interrogatories allowed. (ECF No. 42 at 10–11.) The Plaintiff has not addressed whether or not any of the 28 additional ROGs would fit within the 25 ROG limit. The Court was not informed as to how many ROGs were made by the Plaintiff.

Notwithstanding, a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

The Defendant concedes that evidence of its affirmative defenses is relevant to this case. (ECF No. 42 at 11.) For this reason, the Defendant argues that it complied with its obligations under Federal Rule of Civil Procedure 26(a) and identified every document and witness it intends to call at trial. *Id.* Defendant further contends that the Plaintiff has full access to the same documents and witness testimony produced in this matter as

Defendant, and that Plaintiff is aware of the factual and evidentiary basis for its affirmative defenses.  *Id.*  Plaintiff argues as a matter of fairness the Defendant should be ordered to provide the factual basis for the affirmative defenses that Defendant intends to raise.  *Id.* at 9–10.

The Court, pursuant to its sua sponte duty to limit discovery, additionally finds that Plaintiff has had ample opportunity to either limit the number of interrogatories to include specific affirmative defenses for which it needed discovery on, or to request the Court in a timely manner to allow additional interrogatories that were proportional to the needs of the case.  The Plaintiff did neither.  The Court further denies ROG #13 pursuant to FRCP 26(b)(1) and (2)(C).

### C. Dispute regarding Request for Production #19

The original Request for Production #19, (ECF No. 42-2 at 20.) provides: "All documents related to the investigation of any other employee within the HUMS Group and/or at the Poway location for time card fraud or any other time entry or attendance violations."  Plaintiff narrowed this Request for Production ("RFP") to time card fraud only.  (ECF No. 42-3 at 3.)

Plaintiff contends this RFP is relevant to show that the Project Engineer supervising Plaintiff, Asplund, accused Plaintiff of time card fraud in retaliation after Plaintiff complained about gender discrimination at Honeywell.  (ECF No. 42 at 14.) Plaintiff maintains that assessing whether other employees were also investigated for time card fraud speaks directly to whether Defendant's explanation of why Plaintiff was investigated is pretextual.  *Id.*  Plaintiff contends that whether time card fraud investigations were frequent or rare at the Poway worksite or within the HUMS group is highly probative of this claim. *Id.*

On this point the Defendant posited that this RFP seeks documents that are not relevant to Plaintiff's claims because she was not subject to a formal time card investigation through Human Resources in accordance with Honeywell's formal procedures.  (ECF No. 42 at 16).

Section G of Plaintiff's complaint regards the "time card fraud" investigation of Plaintiff. (ECF No. 1-3 at 16–18.) It provides the facts underlying her retaliation claim. *Id.* The person the Plaintiff claims retaliated against her and who had the retaliatory intent was Asplund. *Id.* On June 28, 2017, Plaintiff contends that Asplund improperly initiated a retaliatory investigation of Ms. Vega's alleged time card fraud which was outside Honeywell's formal procedures and without informing Human Resources that he was doing so. *Id.* at 17.

By Plaintiff's own allegation, the time card fraud investigation was not a formal investigation that was properly conducted through Human Resources. *Id.* Rather it was initiated by Asplund as a pretext for Plaintiff reporting gender discrimination. And the entirety of the gender discrimination allegations as outlined in the "Factual Allegations Common to All Causes of Action" section of the Complaint all point to Asplund as the discriminator. Therefore, the Court finds that RFP #19, even as narrowed, is overbroad. The inclusion of all documents of any employee of fraud investigations, formal or otherwise, are not relevant to prove Asplund's retaliatory intent and pretext.[6]

Notwithstanding, the frequency of other similar time card fraud investigations at the Poway site of similarly situated employees would be relevant to proving whether Asplund's investigation of Plaintiff was done for a retaliatory motive. As Plaintiff proffered, assessing whether other employees were also investigated for time card fraud speaks directly to whether Defendant's (Asplund's) explanation of why Plaintiff was investigated is pretextual. Whether time card fraud investigations were frequent or rare at

---

[6] Plaintiff must show, by specific and substantial evidence, that Defendant's proffered reason is pretext and the true motive was intentional discrimination. *Guz v. Bechtel National Inc.*, 24 Cal.4th 317, 356 (2000). In order to show that the reasons were pretextual, Plaintiff must do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Zeinalie v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011). The ultimate burden of persuasion on the issue of actual discrimination remains with the Plaintiff. *Guz*, 24 Cal.4th at 356. It appears to the Court that the alleged fact that Asplund conducted the investigation outside the proper channels is more probative of the pretext issue than had Asplund gone through the proper channels.

the Poway worksite or within the HUMS group is highly probative of this claim.  And Plaintiff has good reason to believe that time card fraud investigations were rare or unprecedented at Honeywell.  (ECF No. 42 at 14–15.)  Plaintiff ███████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████. *Id.*

Plaintiff, ████████████████████████████ has been provided the relevant discovery for which she seeks the documents in the RFP #19, ████████████████ ████████████████████████████████, it is more probable that Asplund's investigation outside the proper channels was a pretext to retaliate against the Plaintiff for her reporting gender discrimination.  The actual documents of the investigations of others, if they even exist, do not add any probative value ████████████████ ████████████████████████████.  Plaintiff reconfirms in her rebuttal argument that the relevancy of RFP #19 is the frequency of these types of investigations, not the actual documents themselves.  There she states that the documents either corroborate or disprove Peter Manternach's testimony █████████████████ ████████████████████████████████████████████ █████████████████.  (ECF No. 42 at 17.)  Peter Manternach's █████████████ ████████████████████████████████████████.  It becomes clear to the Court that the documents RFP #19 seeks are not relevant, and are cumulative and not proportional to the material issue of the retaliatory claim.  *See e.g.* Fed. R. Civ. P. § 26(b)(1) and (b)(2)(C).  The Defendant does not have to respond to RFP #19.

## IV.   SANCTIONS

Rule 37(a)(5) of the Federal Rules of Civil Procedure provides:

(a)  MOTION FOR AN ORDER COMPELLING DISCLOSURE OR DISCOVERY.

. . .

(5)  *Payment of Expenses; Protective Orders.*

(A)  *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after

14

giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

(B) *If the Motion Is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."

Neither party is seeking sanctions as outlined above.  The Court does not deem sanctions are appropriate in this case.

**IT IS SO ORDERED.**

Dated:  April 30, 2020

_____
Hon. Bernard G. Skomal
United States Magistrate Judge